**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| PRIME HOOKAH, INC., | Civil Action No. 19-7283 (FLW)(TJB) |
| Plaintiff, | **OPINION** |
| v. |  |
| MK DISTRIBUTORS, INC., URV ASHIBEN PATEL, KING GT, INC; RASHID AZEEM; CHAUDHARY QASIM LATIF; TANVEER SYED SHAH |  |
| Defendants. |  |

**WOLFSON, United States District Chief Judge**:

This matter comes before the Court on a Motion by defendants MK Distributors, Inc. ("MK Distributors"); King Gt, Inc. ("King GT"); Rashid Azeem ("Azeem"); Chaudhary Qasim Latif ("Latif"); Urv Ashiben Patel ("Patel"); and Tanveer Syed Shah  ("Shah") (collectively, "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), to dismiss the action initiated by Plaintiff Prime Hookah, Inc. ("Plaintiff" or "Prime Hookah"), or, in the alternative, transfer the case to the United States District Court for the District of Massachusetts. For the following reasons, Defendants' motion to transfer is granted pursuant to 28 U.S.C. § 1404(a) and this matter is transferred to the District of Massachusetts.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In addressing Defendants' Motion to Dismiss, this Court must accept the allegations from Plaintiff's Complaint as true. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).  Thus, the facts recited below are taken from the Complaint and do not represent this Court's factual findings.

1

The instant case involves federal trademark infringement and unfair competition claims. Plaintiff, Prime Hookah, is a New Jersey corporation which sells hookah-related charcoal products throughout the United States. Compl. ¶19. Prime Hookah is the owner of the "DUD" Trademark, serial number 87498220, registered with the United State patent and Trademark Office on June 20, 2017. *Id*. at ¶¶19, 21-22.

Plaintiff alleges that Defendants sell counterfeit DUD products via their online website, and at tradeshows in New Jersey. *Id*. ¶¶13-14,17. In May 2018, Dani Jajati ("Jajati"), a Prime Hookah representative, and Eli Robin ("Robin"), attended the Champs Trade Show in New Jersey and allegedly discovered defendant MK Distributors, a Massachusetts corporation, selling counterfeit DUD products.[1] *See* ECF No 44-2, Certification of Dani Jajati ("Jajati Cert."), ¶¶2-4; ECF No. 44-3, Certification of Eli Robin ("Robin Cert"), ¶2. Jajati informed the MK Distributors representatives that he owned the trademark to the DUD products, and the representatives purportedly represented that MK Distributors would cease selling the infringing products, and immediately left the tradeshow. Jajati Cert. ¶7-8.

Nonetheless, however, MK Distributors allegedly continued to sell counterfeit DUD products on their website. Compl. ¶25. As a result, in August 2018 and October 2018, Plaintiff

---

[1]  This incident is not specifically described in Plaintiff's Complaint, which merely alleges that "Defendant MK during their course of business have attended numerous tradeshows in NJ including the Champs Trade show." Compl. ¶17. In opposition to the instant Motion, Plaintiff proffered declarations from two witnesses who allegedly observed MK Distributors selling the infringing products at the Champs Trade Show. *See* generally Jajati Cert.; Robin Cert. In response, Defendants submit a certification from Urvashiben Patel, the owner and president of MK Distributors. *See generally* ECF No. 41-4, Declaration Urv Ashiben Patel ("Patel Decl"). Patel avers that neither he nor any other representatives for MK Distributors attended any tradeshows in New Jersey, including the Champs Trade show. *Id*. at ¶ 20. The Court does not resolve that factual dispute on the instant motion to dismiss and takes Plaintiff's version of events as true. *Aetna, Inc. v. Jones,* No. 06-2245, 2007 WL 266423, at *2 (E.D. Pa. Jan. 24, 2007)("When reviewing a motion to dismiss for improper venue, a court must likewise accept the plaintiff's allegations as true and must draw all reasonable inferences and resolve all factual disputes in the plaintiff's favor.").

mailed letters to MK Distributors requesting that the entity cease and desist all advertising and selling of DUD products. *Id*. at ¶¶26-30. Plaintiff contacted Patel, MK Distributor's president and owner, who allegedly acknowledged receipt of the letters, and claimed that MK Distributors had returned its entire inventory of the counterfeit products to King GT. *Id*. However, Patel purportedly later acknowledged to Plaintiff that he had not returned MK Distributors' outstanding inventory, but, in fact, sold it. *Id*. at ¶31.

Additionally, Plaintiff alleges that in Fall 2019, Robin attempted to broker a sale of the allegedly infringing DUD products from MK Distributors to ship to New Jersey. Robin Cert. at ¶8. Robin avers that MK Distributors expressed a willingness to sell the infringing products to him in New Jersey, but was concerned that they might be damaged during the shipping process. *Id*. The sale was never effectuated.

Plaintiff alleges that MK Distributors purchased the allegedly infringing products from defendant King GT, another Massachusetts-based entity. *Id*. at ¶¶25, 6. Defendant Azeem is the registered agent for King GT, and allegedly operates the business; Azeem is also a Massachusetts resident. *Id*. at ¶6. Defendants Latif and Shah are, respectively, the president and vice-president of King GT, and are also Massachusetts residents. ECF No. 41-3, Declaration of Chaudhary Qasim Latif ("Latif Decl."), ¶1; ECF No. 41-5, Declaration of Tanveer Syed Shah ("Shah Decl."), ¶1. Allegedly, King GT advertised, and continues to advertise, DUD products on the company's website. Compl. at ¶32.

Furthermore, Plaintiff alleges that counterfeit DUD products were discovered at a "Smokeez Smoke Shop" in Rhode Island, and Plaintiff suspects that Defendants supplied those products as well.[2]  Jajati Decl. at 1¶6.; Pl. Br. at 6.

Subsequently, on February 28, 2019, Plaintiff filed the instant Complaint alleging violations of the Lanham Act, 15 U.S.C. § 1051, as well as violations of New Jersey common law of trademark infringement and unfair competition .  Compl. ¶¶ 37-92.  Defendants filed the instant motion to dismiss, or in the alternative, to transfer.  Plaintiff opposes the motion and also seeks a preliminary injunction restraining Defendants from engaging in the sale of the allegedly infringing products.

## II.   DISCUSSION

Defendants move to dismiss this matter for, *inter alia*, lack of personal jurisdiction and improper venue, or alternatively, seek transfer of venue to the District of Massachusetts.  Def. Br. at 3.

While "[t]he question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue . . . a court may reverse the normal order of considering personal jurisdiction and venue." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).  Accordingly, the Court addresses the venue issue first, and because Defendants have demonstrated that a transfer is appropriate under Section 1404(a), the Court need not reach the question of whether Defendants are subject to the exercise of personal jurisdiction.

---

[2]  In a supplemental letter, Plaintiff further alleges that another store, King Smoke Shop, which has locations in Connecticut and Massachusetts, was recently discovered selling many of the allegedly infringing products, and Shah and Azeem both have ownership interests in King Smoke Shop.  *See* ECF No. 48, Letter from Plaintiff, dated January 21, 2020.

A district court may transfer any civil action to any district where the action might have been brought in the interests of justice and for the convenience of the parties and witnesses. 28 U.S.C. § 1404(a). The function of Section 1404(a) is "to prevent the waste of 'time, energy, and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 24 (1960)). The burden of establishing that transfer is warranted is borne by the moving party. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248 (1981); *Ricoh v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993). The moving party must show that the proposed alternative forum is not only adequate, but also more convenient, than the present forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Three factors guide the Court's discretion when determining whether to grant a transfer under Section 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a) and *Jumara,* 55 F.3d at 879 )). These factors are not exclusive and must be applied on an "individualized analysis . . . made on the unique facts presented in each case." *Id.* at 526-27 (citations omitted). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara,* 55 F.3d at 879-80. As set forth below, a balance of the pertinent private and public interests, and consideration of the interests of justice, indicate that transfer of this matter to the United States District Court for the District of Massachusetts is appropriate.

### A. The Propriety of the Proposed Venue

The Court must first determine whether the proposed venue is an appropriate forum. 28 U.S.C. § 1391(a). Section 1391 provides the guidelines for determining where venue is

appropriate. *See id.* Under Section 1391, venue is proper "in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district where a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391 (b). A defendant that is a corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C § 1391(c). If the proposed alternative forum is appropriate, it is then within the Court's discretion to transfer the action. *Jumara*, 55 F.3d at 883.

Here, there is no dispute that pursuant to Section 1391(b)(1) this litigation could have been brought in the District of Massachusetts, where all of the Defendants reside. *See* Compl. at ¶¶ 3-8. MK Distributors is a Massachusetts corporation with its only office in Woburn, Massachusetts. *See* Patel Decl. at ¶1. King GT is a Massachusetts corporation with its only office in North Dartmouth, Massachusetts. *See* Azeem Decl. at ¶1; Latif Decl. at ¶1; Shah Decl. at ¶1. Also, all of the individual defendants reside in Massachusetts. Therefore, the District of Massachusetts is an appropriate venue.

### B.  Convenience of the Proposed Venue

#### 1.  The Private Interests Weigh in Favor of Transfer.

Under Section 1404(a), a court should consider the following private factors:

(1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.,* 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (citing *Jumara*, 55 F.3d at 879) (internal quotations omitted).  The Court finds that all of these factors, with the exception of the Plaintiff's choice of forum, are either neutral or weigh in favor of transfer.

### i. Plaintiff's Forum Preference as Manifested in the Original choice, Defendant's Forum preference, and Whether the Claim Arose Elsewhere

While a plaintiff's choice of forum is a "paramount concern" that is considered "presumptively correct," *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 452 (D.N.J. 1999), "[t]he choice of forum by a plaintiff is simply a preference; it is not a right." *Liggett*, 102 F. Supp. 2d at 530.  Ordinarily, courts will defer to the Plaintiff's choice forum, particularly where the Plaintiff chooses its home-forum. *Jumara*, 55 F.3d at 880.  However, when the dispute central to a lawsuit arose from events that occurred almost exclusively in another state, courts give substantially less weight to the plaintiff's forum choice.  *Nat'l Prop. Investors VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995) (holding that a plaintiff's choice of venue is not "decisive," and that the choice is accorded less deference "when the central facts of a lawsuit occur outside of the chosen forum").

Plaintiff's decision to file suit in New Jersey and opposition to Defendant's transfer request indicate a strong preference to litigate in New Jersey, Prime Hookah's home venue.  Meanwhile, Defendants have expressed a preference for the District of Massachusetts.  *See* Def. Br. at 30-33.  Plaintiff argues that the claims arose in New Jersey because Defendants "shipped, marketed and sold the infringed and counterfeit goods in New Jersey," and some of the Defendants have entered into New Jersey, while Plaintiff has had no contact with Massachusetts. Pl. Br. at 20.  Defendants

contend that "[t]he overwhelming majority, if not all, of the events giving rise to this litigation occurred in the District of Massachusetts." Def. Br. at 32.

In a trademark case, the claimed wrongs occur "where the unauthorized passing off occurred – whether that occurs solely within one district or many." *Cottman Transmission Systems v. Martino*, 36 F.3d 291, 294–95 (3d Cir. 1994). Passing off occurs where the deceived customer buys defendant's product in the belief that he is buying plaintiffs. *Id.* Under Plaintiff's version of events, one of the corporate defendants, on a single occasion, passed off fraudulent products in New Jersey, at a trade show. Aside from that incident, and an attempted sale to New Jersey, Plaintiff has not identified any events, connected to New Jersey, which support Plaintiff's trademark infringement claims. Indeed, importantly, Plaintiff's own allegations suggest that that the New Jersey sales are not the only instances in which Defendants allegedly infringed on Plaintiff's trademark. As alleged, GT King and MK Distributors sell the allegedly infringing products on an interactive website which is accessible from any state. Plaintiff has also identified counterfeit products in stores in Rhode Island, New York, and Connecticut. *See* Robin Decl. ¶4; Jajati Decl. ¶15-16. Each of the defendant entities contends that it does not and has never operated outside of the Commonwealth of Massachusetts, and that they are not qualified or registered to do business in New Jersey. Patel Decl. ¶7-8.; Latif Decl. ¶7-8; Letter from Plaintiff, dated January 21, 2020. The record currently before the Court indicates that, at best, a modest portion of the allegedly infringing activities occurred in New Jersey.

Although infringement may have occurred in multiple districts, including in New Jersey, a substantial part of the events underlying Plaintiff's claims likely occurred in Massachusetts, where each of the defendant entities has their principle place of business, and from where the individual defendants likely directed the infringing activities. *See Thompson v. NFL*, No. 13–367, 2014 WL

1646929, at *3 (W.D.Pa. Apr.24, 2014) (finding venue proper in Minnesota because Defendant regularly transacted business there and some of the infringing images were "shown or filed in Minnesota."); *Culp v. NFL Prod. LLC*, No. 13–7815, 2014 WL 4828189, at *4 (D.N.J. 2014)(finding that although production of infringing film occurred primarily in New Jersey, "the central facts of [the] lawsuit" occurred outside the forum because plaintiff's claim centered on the "airing of their images which occurs nationally and even worldwide on the internet"); *Parts Geek, LLC v. U.S. Auto Parts Network, Inc.*, No. 09-5578, 2010 WL 1381005, at *8 (D.N.J. Apr. 1, 2010)(finding that private factors weighed in favor of transfer where plaintiff's trademark infringement claims stemmed from actions taken by defendants in their headquarters in California).

Thus, the Court accords little weight to Plaintiff's choice of New Jersey as the forum and finds that the first two factors are neutral, because the alleged claims arose throughout the country, anywhere Defendants sold or marketed the infringing products. However, the third factor weighs slightly in favor of transfer, because the alleged decisions to infringe were likely made in Massachussets.

### ii. Convenience of the Parties

All of the Defendants are citizens of Massachusetts. Compl. ¶¶ 11, 13-15. Plaintiff is a New Jersey entity. Compl. ¶ 10. Regardless of the forum, either Plaintiff or Defendants would be required to travel to participate in the litigation. Neither Plaintiff nor Defendant have represented to the Court that they are incapable of traveling between New Jersey and Massachusetts, or that it would be unduly financially burdensome to do so. Plaintiff highlights the amount of time it took Defendants to obtain counsel and suggests that there is a dearth of intellectual property attorneys in Massachusetts, which would render it difficult for Plaintiff to obtain local counsel. Pl. Br. at

22. Despite Plaintiff's unfounded concerns, the Court is confident that Plaintiff will be able to obtain adequate counsel to assist with the litigation of this matter in Massachusetts.

Because all of the parties are fully capable of traveling between the relevant states, this factor is neutral.

### iii. Convenience of the witnesses

The convenience of the witnesses must also be considered, but "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Plaintiff asserts that this case will "heavily" rely on the testimony of "third parties from New Jersey and New York," and that such third parties may not be willing to travel to Massachusetts. Pl. Br. at 20, 23. Specifically, Robin, one of the witnesses who purportedly observed MK Distributors selling the infringing products at a trade show in New Jersey, asserts that "[i]f the case is moved to Massachusetts it would be a big inconvenience, and I may not be able to appear." Robin Decl. at ¶10. Jajati also asserts that unnamed customers who purchased DUD products from Defendants in the past, or who refuse to purchase DUD products from Prime Hookah due to their confusion over which products are legitimate, are located in New Jersey and New York and it would be inconvenient for them to travel to Massachusetts to testify. Jajati Decl. ¶11-14. On the other hand, Defendants, without identifying specific witnesses, assert that all of their material witnesses, including each entities' respective affiliates and employees, are located in Massachusetts. Def. Br. at 31.

While Plaintiff's New Jersey witnesses may be inconvenienced, transfer is appropriate "[b]ecause the majority of the non-party witnesses who likely have the most probative knowledge on the contested issues are located in" the District of Massachusetts. *Mancini v. Benihana Nat. Corp.*, No. 13-3167, 2013 WL 6147808, at *4 (D.N.J. Nov. 22, 2013). The crux

of trademark infringement claims is typically the activity of the alleged infringers and their employees, all of whom are located in Massachusetts. If Plaintiff intends to take deposition testimony from Defendants' employees, Plaintiff would be required to travel to Massachusetts, regardless. *See* Fed. R. Civ. P. 45(c)(1)(b)(i) (providing a subpoena may command a party or a party's officer to attend a trial, hearing or deposition, "within the state where the person resides, is employed, or regularly transacts business in person"). Similarly, many of Plaintiff's non-party witnesses, the individuals who purchased allegedly infringing products from stores in Rhode Island and New York, and the proprietors of those stores are located outside of Massachusetts and New Jersey, and therefore, those witnesses would be required to travel to either New Jersey or Massachusetts, in any event. Accordingly, this factor weighs slightly in favor of transfer.

### iv. Location of books and records

The Court must also consider "the location of books and records (only to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. Neither party has suggested that the relevant books and records would not be capable of being produced in Massachusetts. Furthermore, with the advent of new technological advances, these documents or records can be easily moved electronically to different venues. *Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 810 (D. Del. 2011)(noting that "technology [may] make[] the physical location of documents relatively unimportant . . . .").

Accordingly, this factor carries little weight and is in equipoise.

### C. The Public Interests Weigh in Favor of Transfer

Under Section 1404, the public interests a court should consider include:

(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative

> administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Danka Funding*, 21 F. Supp. 2d at 474 (citing *Jumara*, 55 F.3d at 879-80) (internal quotations omitted).

### i. Enforceability of the judgments

Neither party has suggested that a judgment rendered in this case in one forum would not be enforceable in the other and, accordingly, this factor does not weigh in favor of either forum. *See* Moore's Federal Practice — Civil § 111.13 ("[W]hen both forums are federal district courts, this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." (citing *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.,* 719 F. Supp. 446, 450 (W.D.N.C. 1989)).

### ii. Practical considerations that could make the trial easy, expeditious, or inexpensive and court congestion

First, the practical considerations regarding scheduling and coordinating the witnesses' availability and court congestion weigh in favor of transferring this matter to Massachusetts. Neither party has suggested that litigating in the other forum would be unduly cost-prohibitive or burdensome; however, as noted above, all of the Defendants' affiliates, who are likely to be non-party witnesses, are located in Massachusetts, as are the Defendants themselves. Consequently, coordinating schedule and traveling arrangements are likely to be less burdensome if this matter is litigated in Massachusetts.

Second, the administrative difficulties stemming from court congestion also support transferring this matter. The District of New Jersey has a demonstrably heavier caseload than the

District of Massachusetts. The U.S. Court's Statistics and Reports indicate that as of June 30, 2019, there were 34,784 pending cases in New Jersey and 4,003 pending in the District of Massachusetts. *See* U.S. Courts, "Civil Statistical Tables For The Federal Judiciary," (June 30, 2019), https://www.uscourts.gov/statistics/table/c-3/statistical-tables-federal judiciary/2019/06/30

The relative congestion of dockets in the two districts suggests that this action is likely to proceed to trial, or otherwise reach its resolution, more efficiently in the District of Massachusetts than in this Court.

Thus, this factor weighs in favor of transfer.

### iii. Local interest in Deciding Local Controversies at Home, Public Policies of the Fora and Familiarity of Local Judges with Applicable State law

New Jersey indisputably has an interest in protecting Plaintiff's interests as Prime Hookah is a New Jersey corporation. *See Zippo*, 952 F.Supp. at 1127 (explaining Pennsylvania's interest in protecting its domiciliaries from trademark infringement). Although New Jersey has an interest in providing a forum for a business operating there to vindicate its rights, Prime Hookah does not contend that it will not be able to prosecute its claims in the District of Massachusetts. The Court finds that Massachusetts' interest in deciding this matter is more substantial as the allegedly infringing actions were directed from that state. *Parts Geek, LLC*, No. 09-5578, 2010 WL 1381005, at *9 (noting that "[a]lthough New Jersey has an interest in providing a forum for a business operating there to vindicate its rights" California's interests in the matter outweighed New Jersey's because "the alleged wrongful acts occurred there" and plaintiff did "not contend that it will not be able to prosecute its claims [in the transferee district]"). And, Massachusetts has an interest in policing its companies.

Furthermore, the central facts of the lawsuit occurred in Massachusetts, or involve conduct by the individual defendants, who all reside in Massachusetts. The lawsuit's connection

to New Jersey is minimal. The burden of jury duty should not be placed on citizens with a remote connection to the lawsuit. *See Ricoh Co. v. Honeywell, Inc.,* 817 F.Supp. 473, 478 (D.N.J. 1993) ("New Jersey jurors should not be burdened with adjudicating a matter ... stemming from conduct which is/was largely localized in Minnesota and Illinois"). In light of the greater interest that Massachusetts and its residents have in this litigation, the burden of jury duty is more fairly placed upon them. Accordingly, this factor weighs in favor of transferring venue.

Neither party has suggested there are public policy concerns in either forum which require that the case be heard in one forum over the other, and thus, that factor is neutral.

Finally, while familiarity of the forum court with the applicable law is a consideration, it is not enough that a court might have to apply another jurisdiction's law. *See Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.,* 847 F. Supp. 1244, 1247 (D.N.J.1994). In this instance, the forum court would likely have to apply both New Jersey and federal trademark law. Plaintiff has alleged New Jersey common law trademark infringement and unfair competition claims, which would be governed by New Jersey law. However, Plaintiff has requested injunctive relief and a Massachusetts court would be better able to administer and enforce an injunction against a Massachusetts company. *See Law Bulletin Pub., Co. v. LRP Pub., Inc.*, 992 F.Supp. 1014, 1020–21 (N.D.Ill. 1998) (finding transfer to Florida appropriate because, in part, "a Florida court is in a better position to enforce and monitor any injunctive relief awarded."). Accordingly, that factor is neutral.

### D. Interests of Justice

Defendants have met their burden to show a transfer to the District of Massachusetts is warranted. Taking into account the private and public interest factors and the interests of justice, as well as all relevant practical interests, the Court is persuaded, by the fact that the allegedly

infringing activity was directed from Massachusetts and many of the witnesses being located outside of New Jersey, that Defendants met their burden in demonstrating this matter should be transferred to the District of Massachusetts.

### III.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Transfer is **GRANTED** and this matter is transferred to the United States District Court for the District of Massachusetts. Defendants' Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's Motion for a Preliminary Injunction are both DENIED without prejudice, with the right to refile such motions in the transferee court .

Dated: February 5, 2020               s/ Freda L. Wolfson

                                      Freda L. Wolfson
                                      U.S. Chief District Judge