## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                                )
**PRIME HOOKAH, INC.,**                          )
                                                )
       **Plaintiff,**     )      **Civil Action No.**
                                                )      **20-10231-FDS**
       **v.**            )
                                                )
**M.K. DISTRIBUTORS INC.,**                      )
**URVASHIBEN PATEL, KING GT INC.,**              )
**RASHID AZEEM, CHAUDHARY QASIM**                )
**LATIF, TANVEER SYED SHAH,**                    )
**ABC COMPANY, and DOES 1-10,**                  )
                                                )
       **Defendants.**    )
_____)

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

**SAYLOR, C.J.**

This is an action for trademark infringement.  Plaintiff Prime Hookah, Inc. is a distributor of various hookah-related products.  It sells some of those products under the "DUD" brand, for which it holds a federal trademark registration.  The complaint alleges that M.K. Distributors Inc. and King GT Inc., two other distributors of hookah-related products, imported and sold goods bearing counterfeit or unauthorized reproductions of the DUD mark.

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.  For the reasons set forth below, the motion will be granted in part and denied in part.

## I.    Background

### A.    Factual Background

The facts are stated as set forth in the complaint except where otherwise noted.

Prime Hookah, Inc. is a New Jersey corporation with a principal place of business in

South Amboy, New Jersey.  (Compl. ¶ 2).  Since 2015, Prime has sold a variety of hookah-related products, including charcoal, throughout the United States.  (*Id.* ¶ 19).  It sells those products under the mark "DUD," for which it holds a federal trademark registration (Reg. No. 5,385,192).  (*Id.* ¶¶ 19-22; Compl., Ex. D).[1]

M.K. Distributors Inc. is a Massachusetts corporation with a principal place of business in Woburn, Massachusetts.  (Compl. ¶ 3; Compl., Ex. A).  Urvashiben Patel is a director of M.K. Distributors.  (Compl. ¶ 4; Compl., Ex. A).  He is also the corporation's registered agent in the Commonwealth and its president, secretary, and treasurer.  (Compl. ¶ 4; Compl., Ex. A).

King GT Inc. is a Massachusetts corporation with a principal place of business in Canton, Massachusetts.  (Compl. ¶ 5; Compl., Ex. B).  Rashid Azeem is the registered agent for King GT.  (Compl. ¶ 6; Compl., Ex. B).  Chaudhary Qasim Latif is a director of King GT as well as its president and secretary.  (Compl. ¶ 7; Compl., Ex. B).[2]  Tanveer Syed Shah is a director and vice president of King GT and its treasurer.  (Compl. ¶ 8; Compl., Ex. B).

The complaint alleges that M.K. Distributors, Patel, King GT, Azeem, Latif, Shah, several unknown persons (Does 1-10), and an unknown company (ABC Company) "imported, distributed, transported, sold, [or] offered to sell . . . charcoal products bearing unauthorized reproductions, copies, counterfeits and colorable imitations of" the DUD mark or assisted in doing so.  (Compl. ¶¶ 9, 10, 23).

The complaint does not state when and where those events transpired.  It alleges that at some point, M.K. Distributors "purchased their goods" from King GT.  (*Id.* ¶ 24).  It further

---

[1] It is not clear from the complaint whether Prime uses the DUD mark to sell only charcoal products or hookah-related products more generally.  (*See* Compl. ¶¶ 2, 19).  The difference is not material for present purposes.

[2] The complaint refers to Latif by an alias, "Sam."  (*See generally* Compl.).  For the sake of clarity, the Court will refer to that defendant by his name as set forth in the case caption, Chaudhary Qasim Latif.

alleges that M.K. Distributors then sold products bearing the DUD mark on its website.  (*Id.* ¶ 25).  That website appears to offer nicotine products for sale, which could include hookah products, but no products of any kind are currently visible.  (Untitled, https://www.mkdistributor.com/index.php?route=account/login (last visited July 9, 2020) (archived at https://perma.cc/8R6V-BLD3)).  Attached to the complaint are "photos of the products that were offered for sale."  (Compl. ¶ 33; Compl., Ex. F).  Those photographs show several hookah products, many of which bear a mark that appears at least somewhat similar to the DUD mark.  (*Compare* Compl., Ex. D *with* Compl., Ex. F).  However, there is no other information identifying the photographs or their contents.  (*See* Compl. ¶ 33; Compl., Ex. F).

On August 20, 2018, Prime's lawyer sent a letter to M.K. Distributors, demanding that it cease and desist advertising and selling products bearing the DUD mark.  (Compl. ¶ 26; Compl., Ex. E).[3]  According to the complaint, on October 5, 2018, Prime sent another, similar warning to M.K. Distributors and demanded that it turn over its entire inventory of products bearing the DUD mark.  (*See* Compl. ¶¶ 27-28).

The complaint alleges that during a phone call at an unspecified time, Patel acknowledged receiving the letters from Prime and stated that he had given back his "entire inventory" to King GT.  (*Id.* ¶ 30).  It further alleges that at some unidentified later point, Patel admitted that he had in fact sold his "entire inventory" of goods rather than returning them to King GT.  (*Id.* ¶ 31).

According to the complaint, King GT also advertised and sold products bearing the DUD mark and was still advertising them as of the date the complaint was filed.  (*Id.* ¶ 32).  The

---

[3] The complaint alleges that M.K. Distributors "was warned on or about August 8," but the letter is dated August 20, 2018.  (*Compare* Compl. ¶ 26 *with* Compl., Ex. E).  This inconsistency does not matter for present purposes.

complaint alleges that King GT did so on its website.  (*Id.*).  Currently, there appears to be no server located at the web address allegedly associated with that website.  (*See* Untitled, https://kinggtinc.com/ (last visited July 9, 2020)).

### B.      Procedural Background

On February 28, 2019, Prime filed this action in the United States District Court for the District of New Jersey.  The complaint asserts eight counts against M.K. Distributors, Patel, King GT, Azeem, Latif, Shah, ABC Company, and Does 1-10:  trademark counterfeiting in violation of 15 U.S.C. § 1114 (Count One); trademark infringement in violation of 15 U.S.C. § 1114 (Count Two); false designation of origin in violation of 15 U.S.C. § 1125(a) (Count Three); trademark dilution in violation of 15 U.S.C. § 1125(c) (Count Four); importing goods bearing infringing marks or names in violation of 15 U.S.C. § 1124 (Count Five); unfair competition in violation of 15 U.S.C. § 1125(a) (Count Six); and claims for trademark infringement (Count Seven) and unfair competition (Count Eight) under New Jersey common law.

On August 2, 2019, defendants moved to dismiss the complaint for failure to state a claim or, in the alternative, to transfer the action to this district.  On September 3, 2019, Prime filed an opposition, which also included a request for a preliminary injunction requiring defendants to cease importing, advertising, selling, and disposing of any goods bearing the DUD mark.

On February 5, 2020, Chief Judge Wolfson of the United States District Court for the District of New Jersey granted defendants' motion to transfer and denied without prejudice both defendants' motion to dismiss and Prime's motion for a preliminary injunction.  *See generally Prime Hookah, Inc. v. MK Distributors, Inc.*, 2020 WL 563524 (D.N.J. Feb. 5, 2020).

Defendants have now renewed their motion to dismiss.[4]

## II.      Standard of Review

On a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.      Analysis

### A.      Whether the Complaint Plausibly Alleges Defendants Used Prime's Mark

Count One is a claim for trademark counterfeiting, which in substance requires a plaintiff to show that a defendant used a counterfeit of the plaintiff's mark in commerce.  *See Carroll Shelby Licensing, Inc. v. Superformance Int'l., Inc.*, 251 F. Supp. 2d 983, 987 (D. Mass. 2002)

---

[4] Prime has also renewed its motion for a preliminary injunction, which will be addressed in a separate order.

(citing 15 U.S.C. §§ 1114(1)(a), 1117(b)).  Count Two is a claim for trademark infringement,

which requires a plaintiff to show, among other things, an "allegedly infringing use [that] is

likely to cause consumer confusion."  *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531

F.3d 1, 12 (1st Cir. 2008).  Count Three is a claim for false designation of origin and Count Six

is a claim for unfair competition, both of which also require a plaintiff to show an allegedly

infringing use that is likely to cause consumer confusion.  *See Borinquen Biscuit Corp. v. M.V.*

*Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006).

In short, at a minimum, in order to be eligible for relief on any of these claims, the

complaint must allege facts plausibly showing that defendants used either Prime's mark or a

confusingly similar mark.  Defendants contend that the complaint fails to do so, and therefore

should be dismissed.

Without question, the complaint is poorly drafted.  Many of its allegations are conclusory

at best, and there are few specific factual claims about defendants' use of the mark.  Paragraph

23 alleges that defendants sold "charcoal products bearing unauthorized reproductions, copies,

counterfeits and colorable imitations of Prime's Trademarks."   (Compl. ¶ 23).  The specifics, if

any, are then set forth in three short paragraphs:

> 25.     MK was selling DUD on their website using
> https://www.mkdistributor.com/index.php?route=product /category&path=394
>
> * * *
>
> 32.     All the Defendants have advertised and sold goods under the DUD name
> on their website and to other vendors even though they were not authorized.  GT
> was advertising and is still advertising DUD on their website.
> https://kinggtinc.com/hookahs
>
> 33.     It is believed the Defendants have made numerous sales, and profits using
> the Plaintiff's name, image and logo.  Attached are photos of the products that
> were offered for sale.  Exhibit F.

(*Id.* ¶¶ 25, 32, 33).

To start, the fact that defendants sold goods "using the Plaintiff's name, image and logo" or "under the DUD name . . . even though they were not authorized" to do so is not, by itself, a trademark violation.  (*Id.* ¶¶ 32, 33).  "[T]rademark law generally does not reach the sale of *genuine* goods bearing a true mark even though such sale is without the mark owner's consent." *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 638 (1st Cir. 1992) (emphasis added) (quoting *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987)).[5]  Thus, even if defendants sold goods bearing the DUD mark, that generally would not constitute a trademark violation if those goods originated with Prime.  *See id.*[6]  To construe the complaint to allege a trademark violation, one has to assume that the alleged unauthorized sales in question were sales of "charcoal products bearing unauthorized reproductions, copies, counterfeits and colorable imitations of" the DUD mark.  (Compl. ¶ 23).  In other words, to state a claim, the complaint must be construed to allege that defendants sold goods that bore the DUD mark but were not genuine DUD products.  (*See id.* ¶¶ 23, 25, 32, 33).

The complaint, however, contains little information as to what infringing products were sold, by what means, and during what time period.  Paragraph 25 alleges only that M.K. Distributors sold "DUD" on its website; it does not allege what products those were, how they infringed on Prime's mark, or when M.K. Distributors advertised and sold them.  Similarly, paragraph 32 alleges that King GT was advertising "DUD" on its website.  But while it provides

---

[5] To cite a common example, all used cars, and all other products in the second-hand market, are sold without infringing on the manufacturers' trademarks, even though they bear those marks.  *See Montblanc–Simplo GmbH v. Staples, Inc.*, 172 F. Supp. 2d 231, 236 (D. Mass. 2001), *vacated pursuant to settlement agreement*, 175 F. Supp. 2d 95 (D. Mass. 2001) ("Under the 'first sale' doctrine, the trademark protections of the Lanham Act as to a particular item are exhausted after the trademark owner's first authorized sale of that individual product.")

[6] Under certain circumstances, the unauthorized sale of genuine goods may nevertheless constitute a trademark violation "when genuine, but unauthorized, imports differ materially from authentic goods authorized for sale in the domestic market."  *See Nestle*, 982 F.2d at 638; *see, e.g.*, *Monahan Prods. LLC v. Sam's E., Inc.*, 2020 WL 2561255 (D. Mass. May 20, 2020).  Here, the complaint contains no such allegations, and for the sake of simplifying the analysis the Court will disregard that possibility.

some information about when that occurred (at the time that Prime filed its complaint), it says nothing about what products those were and how they infringed on the mark. Finally, paragraph 33 says nothing about how and when defendants used the mark; it contains only conclusory allegations and a reference to the photographs attached to the complaint.

In an attempt to bolster the claims, the three cited paragraphs each refer to external evidence: two websites and a set of photographs. In theory, such evidence could provide adequate factual support for Prime's allegations. *See, e.g.*, *ICON Health & Fitness, Inc. v. IFITNESS, Inc.*, 2012 WL 1120925, at *3 (S.D. Fla. Apr. 3, 2012); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1122 (C.D. Cal. 2001). All three sources, however, are problematic.

First, the two websites do not support Prime's allegations. The one allegedly linked to M.K. Distributors does not display any products for sale, and there is no server located at the web address supposedly associated with King GT.[7] Therefore, and unlike active websites, merely referring to them does not provide notice to defendants about what images or products advertised there were allegedly infringing. *Compare ICON Health & Fitness, Inc.*, 2012 WL 1120925, at *3 (finding a complaint plausibly alleged trademark violations because it referred to an operational website where every product sold was supposedly infringing). Of course, Prime could have attached a screenshot or PDF of either website to the complaint, or even preserved a copy of the website using an internet archive service, but it failed to do so.[8]

---

[7] It is not clear why neither website is now operational, although Prime contends it is because defendants have disabled them. (May 6, 2020 Hr'g Tr. at 14:24-15:7).

[8] In response to the motion to dismiss, Prime provided a series of screenshots suggesting that at some point, at least one of the websites displayed products for sale. (Pl. Opp, Ex. E). Those screenshots show a website located at the same domain name (www.mkdistributor.com) advertising several hookah-related products. (*Id.*). On those products, a mark that appears somewhat similar to the DUD mark is visible. (*See id.*). However, those screenshots may not be considered on this motion to dismiss. *See Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013). A complaint cannot incorporate the contents of a website by reference simply by mentioning the website's

Unlike the websites, the photographs attached to the complaint do show hookah products. They depict several products bearing marks that appear to be similar to the DUD mark.  But the complaint does not indicate whether the items depicted are counterfeit products, products bearing a confusingly similar mark, or legitimate products manufactured or sold by Prime.  Nor is there any indication as to where the goods were located or where or how they were offered for sale. (*See* Compl., Ex. F).  Again, paragraph 33 simply alleges that the items depicted are products sold by defendants using Prime's "name, image, and logo."  (*See* Compl. ¶ 33).

In its opposition to the motion to dismiss, Prime submitted a certification from an individual named Eli Robin that it says provides context for the photographs.  (*See* Pl. Opp., Ex. D).  In that certification, Robin states that he "took photos of the counterfeit DUD products" that he found in a store that were identical to those he observed M.K. Distributors marketing at a trade show in May 2018.  (*Id.* ¶¶ 1-6).  But on a motion to dismiss, "a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto."  *Freeman*, 714 F.3d at 35-36.  There are "narrow exceptions," but none apply here.  *See id.* (listing exceptions).

The question, then, is whether the complaint's allegations, taken together, are sufficient to survive a motion to dismiss.  It is true that federal courts have applied "more modest pleading standards" to trademark claims.  *Varsity News Network, Inc. v. Carty Web Strategies, Inc.,* 2017 WL 7201873, at *6 (C.D. Cal. Aug. 30, 2017); *see also Facebook, Inc. v. Power Ventures, Inc.*, 2009 WL 1299698, at *5 (N.D. Cal. May 11, 2009) ("[P]articularized pleading is not required for a trademark infringement claim.").  Courts "have found a trademark claim to be sufficiently [pleaded] when the complaint identified the plaintiff's trademarks and pointed to 'specific

existence.  *Cf. My Health, Inc. v. General Elec. Co.*, 2015 WL 9474293, at *1 (W.D. Wis. Dec. 28, 2015) (explaining that a "website is not a simple document that can be incorporated by reference into the complaint").

websites with the infringing trademark usage' but stopped short of identifying a specific image

or product." *ICON Health & Fitness, Inc.*, 2012 WL 1120925, at *3.  However, courts have also

stated that the complaint must contain some "factual support as to how and when unauthorized

uses of the [mark] were made." *Varsity News Network*, 2017 WL 7201873, at *6.

Again, the complaint here is poorly drafted, and the nature of the alleged violation has to

be inferred because it is never stated directly.  Nonetheless, and with considerable misgivings,

the Court concludes that the complaint here, read as a whole, manages to scrape over the low bar

necessary to survive a motion to dismiss.  Read as a whole, it does identify the trademark at

issue, the type of products bearing the trademark, and the means by which the offending products

were sold—if only barely.  And by alleging when and where those products were sold, albeit in

extremely rough terms, it appears to put defendants on sufficient notice to be able to defend

against the claims.  *See ICON Health & Fitness, Inc.*, 2012 WL 1120925, at *3; *Perfect 10, Inc.*,

167 F. Supp. 2d at 1122.  Accordingly, the motion to dismiss will be denied as to Counts One,

Two, Three, and Six.

### B.     Whether the Complaint States a Claim for Trademark Dilution

Count Four is a claim for trademark dilution.  "To establish trademark dilution, a plaintiff

must prove that someone caused the 'blurring or dilution by tarnishment of [a] famous mark.'"

*Lyons v. Gillette*, 882 F. Supp. 2d 217, 228 (D. Mass. 2012) (quoting 15 U.S.C. § 1125(c))

(alteration original).  "Both the terms 'famous' and 'dilution' are terms of art given specific

rigorous meanings" by 15 U.S.C. § 1125(c).  *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27,

45 (1st Cir. 1998).  In order to be "famous," a mark must be "widely recognized by the general

consuming public of the United States as a designation of source of the goods or services of the

mark's owner."  15 U.S.C. § 1125(c)(2)(A).  The factors to consider in "determining whether a

mark possesses the requisite degree of recognition," are the duration, extent, and geographic

reach of its use; the volume and geographic reach of sales of goods or services offered under it;

the extent of actual recognition; and whether it is registered.  15 U.S.C. § 1125(c)(2)(A).

Here, the complaint does not allege any facts showing that the DUD mark is famous.  It

asserts that the mark "is both inherently distinctive and famous in the hookah industry." (Compl.

¶ 20).  Even if that is true, fame only within a particular industry "is nowhere near sufficient to

achieve the status of 'famous mark.'"  *I.P. Lund Trading ApS*, 163 F.3d at 47 (internal quotations

omitted) (holding a mark nationally renowned in "the world of interior design and high-end

bathroom fixtures" was not sufficiently famous); *Varsity News Network*, 2017 WL 7201873, at

*7 (finding "fame in the niche market of high school athletics" to be insufficient).  While the

complaint also alleges that the DUD mark enjoys wider recognition, it does so in a conclusory

fashion, without any specific factual allegations.  (*See* Compl. ¶ 20 (asserting that it has

"acquired enormous value and recognition in the United States and throughout the world")).

Such conclusory assertions "do not support the allegation that the marks in suit are famous."  *Luv*

*N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 757 (S.D.N.Y. 2012) (rejecting

allegations that plaintiff's marks "have all become widely known throughout the United States

and worldwide.").  Count Four therefore fails to state a claim for trademark dilution and will be

dismissed.

C.   **Whether the Complaint States a Claim for Importing Goods Bearing Infringing Marks or Names**

Count Five is a claim for importing goods bearing infringing marks or names.  *See* 15

U.S.C. § 1124.  To succeed on such a claim, "a trademark owner need only prove that the

defendant imported goods bearing copies of its federally registered marks."  *Nike, Inc. v. Eastern*

*Ports Custom Brokers, Inc.*, 2018 WL 3472628, at *8 (D.N.J. July 19, 2018) (internal quotations

omitted).

Here, the complaint contains no plausible allegations that defendants did so.  It contains only conclusory allegations, with no specificity whatsoever as to which defendants imported goods bearing the DUD mark and where, when, or how they did so.  (*See* Compl. ¶¶ 23, 35, 63).  Prime points to an invoice previously submitted by defendants, which appears to show that in 2016, King GT ordered more than $100,000 of hookah-related products from New Ways BV, a company in the Netherlands, to be shipped to its address in Massachusetts.  (Pl. Opp., Ex. F).  The descriptions in the invoice for all of those products include the word "DUD."  (*Id.*).  However, the invoice may not properly be considered at this stage, as it is neither attached to the complaint nor does it fall under any of the relevant exceptions.  *See Freeman*, 714 F.3d at 35-36.  And even if it could be, it would only provide support for Prime's allegations as to King GT; the complaint alleges no facts showing that the other defendants had any role in importing goods bearing the DUD mark.  Count Five therefore fails to state a claim for importing goods bearing infringing marks or names and will be dismissed.

### D.   Whether the Complaint States Claims Under New Jersey Common Law

Counts Seven and Eight are claims for trademark infringement and unfair competition under New Jersey law.  In New Jersey, "[a] plaintiff must prove the same elements to establish either federal or common law trademark infringement."  *MLB Promotion Corp. v. Colour-Tex, Inc.*, 729 F. Supp. 1035, 1039 (D.N.J. 1990); *see also Coach, Inc. v. Fashion Paradise, LLC*, 2012 WL 194092, at *5 (D.N.J. Jan. 20, 2012).  "Similarly, the identical facts would also support a common law unfair competition claim and a false designation of origin claim under 15 U.S.C. § 1125(a)."  *MLB Promotion Corp.*, 729 F. Supp. at 1039.[9]  Defendants contend that because the

---

[9] New Jersey statutes also provide causes of action for trademark infringement and unfair competition.  *See* N.J. Stat. Ann. § 56:3–13.16; N.J. Stat. Ann. § 56:4–2.  Notably, the complaint does not allege violations of these provisions.  Even if it did, their analysis is also "similar to the [corresponding] federal Lanham Act claims."  *Coach, Inc.*, 2012 WL 194092, at *5.

analysis of these claims is similar, they should be dismissed for the same reasons as Prime's federal-law claims for trademark infringement and unfair competition. Accordingly, for the reasons above, defendants' motion to dismiss Counts Seven and Eight will be denied.

**E.      Whether the Complaint States a Claim Against the Individual Defendants**

Finally, defendants contend that the claims against the individual defendants must be dismissed. They correctly point out that in order to state a claim against those defendants, the complaint must allege facts that either show they personally participated in wrongfully using the DUD mark or justify holding them liable by piercing the corporate veil. Because the complaint does neither, they say, it provides no basis upon which to hold them liable.

"Under Massachusetts law, corporate officers are personally liable for any tortious activity in which they personally participate." *Chesterton Capital, LLC v. Holley*, 2017 WL 6209189, at *13 (D. Mass. Dec. 8, 2017) (quoting *Frontier Mgmt. Co. v. Balboa Ins. Co.*, 658 F. Supp. 987, 991 (D. Mass. 1986)). Courts elsewhere have repeatedly held that such activity includes violations of the Lanham Act. *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3rd Cir. 1978); *see, e.g.*, *Farm Fresh Direct Direct By a Cut Above LLC v. Downey*, 2017 WL 4865481, at *5 (D. Md. Oct. 26, 2017). For example, a "central figure" in a corporation may be held personally liable for acts of unfair competition that he "authorized and approved." *Donsco*, 587 F.2d at 606.

Here, the complaint plausibly alleges, albeit barely, that Patel personally participated in the allegedly infringing uses of Prime's mark. It alleges that on a phone call, Patel acknowledged receiving cease-and-desist letters from Prime and represented that he had returned his "entire inventory" to King GT. (*Id.* ¶ 30). One could reasonably infer that meant his "entire inventory" of allegedly infringing products, rather than of his business as a whole. The complaint further alleges that at some later date, Patel admitted that he had in fact sold his "entire

inventory"—again, presumably of goods infringing on the DUD mark—rather than returning

them to King GT.  (*Id.* ¶ 31).  Drawing all reasonable inferences in Prime's favor and assuming

these allegations are true, they suggest that Patel was personally involved in the allegedly

infringing sale of goods bearing the DUD mark.

However, the complaint contains no allegations of personal participation by Azeem,

Latif, or Shah.  While it refers to all of the defendants collectively throughout, it alleges no facts

plausibly showing that Azeem, Latif, or Shah participated in any way in using the DUD mark

except insofar as they generally managed King GT.  Indeed, the only times it specifically

mentions those defendants is to describe the corporate offices they held at King GT and to

generally allege that they "operated and directed the company."  (Compl. ¶¶ 6, 7, 8, 42).[10]

Nor does the complaint plausibly allege that they are liable under a theory of "piercing

the corporate veil."  Under that doctrine, individual members of a corporation may be held liable

for the acts of the company "where they control the operation of the corporation and run it for

their personal benefit, and where justice requires that the separate existence of the corporation be

ignored."  *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 16 (1st Cir. 1985).  But

the complaint does not allege any facts that would justify piercing the corporate veil of King

GT.[11]  Prime seems to acknowledge as much in its opposition, instead contending only that

---

[10] Prime contends that these allegations are sufficient to show personal participation by Azeem, Latif, and Shah, citing *Farm Fresh Direct Direct By a Cut Above LLC v. Downey*.  *See* 2017 WL 4865481, at *6.  That case is distinguishable.  There, the complaint alleged that the individual defendants had personally participated in violating the Lanham Act by filing articles of organization that "create[d] a name confusingly similar" to the plaintiff's own.  *Id.*  By contrast, there are no allegations here that Azeem, Latif, and Shah violated the Lanham Act simply by creating King GT.

[11] Twelve factors guide the application of the doctrine:  "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) non-functioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." *Attorney Gen. v. M.C.K., Inc.*, 432 Mass. 546, 555 n.19 (2000); *see also Pepsi-Cola*, 754 F.2d at 14-16.  The

14

personal participation by the individual defendants "provide[s] an independent basis for imposition of liability without regard to reliance on piercing the veil jurisprudence." (Pl. Opp. at 19).

Accordingly, defendants' motion to dismiss will be granted as to all claims against defendants Azeem, Latif, and Shah and denied as to Counts One, Two, Three, Six, Seven, and Eight against Patel.

## IV. <u>Conclusion</u>

For the foregoing reasons, defendants' motion to dismiss is GRANTED as to Counts Four and Five, and as to all claims against defendants Rashid Azeem, Chaudhary Qasim Latif, and Tanveer Syed Shah, and is otherwise DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV<br>
F. Dennis Saylor IV<br>
Chief Judge, United States District Court

Dated:  July 13, 2020

---

complaint does not set forth any facts that, taken as true, would justify piercing the corporate veil of King GT under this analysis.